UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMONDZA HUNTER,<br><br>Plaintiff,<br><br>vs.<br><br>W. WHITE, *et al.*,<br><br>Defendants. | Case No. 1:13-cv-01681-RRB<br><br>**DISMISSAL ORDER** |

Plaintiff Demondza Hunter, a California state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action under 42 U.S.C. § 1983 against various individuals employed by the California Department of Corrections and Rehabilitation.[1] Hunter is incarcerated at the California Substance Abuse Treatment Center, Corcoran ("CSATF"), where the events underlying Hunter's claims occurred.

///

///

[1] In addition to W. White, Correctional Officer, Hunter names as Defendants: J. Plough, Correctional Officer; W. D. Watkins, Lieutenant; Vechicco, Correctional Officer; A. Rodriquez, Correctional Officer; J. Martinez, Correctional Officer; Lamb, Correctional Officer; C. Ogbuehi, Physician's Assistant; C. Arnold, RN; C. M. Heck, Appeals Coordinator; J. Cota, Appeals Coordinator; J. Zamora, Appeals Examiner; O. A. Ibarra, Lieutenant; J. Reynoso, CDW; D. Smiley, CEO; H. Coffee, Lieutenant; R. Diaz, Warden; L. Cartagena, Administrative Assistant/Public Information Officer; R. Briggs, Chief CDR Appeals; Frite, SRN; Hashemi, MD; S. Follet, CEO; J. Lewis, Chief Medical Appeals Officer; and John/Jane Does 1–10, Peace Officers.

## I. SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[2] This Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief."[3] Likewise, a prisoner must exhaust all administrative remedies as may be available,[4] irrespective of whether those administrative remedies provide for monetary relief.[5]

In determining whether a complaint states a claim, the Court looks to the pleading standard under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[6] "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[7] Failure to state a claim under § 1915A incorporates the familiar standard

---

[2] 28 U.S.C. § 1915A(a).

[3] 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c); *see Lopez v. Smith*, 203 F.3d 1122, 1126 & n.7 (9th Cir. 2000) (en banc).

[4] 42 U.S.C. § 1997e(a); *see Woodford v. Ngo*, 548 U.S. 81, 93–95 (2006) ("proper exhaustion" under § 1997e(a) is mandatory and requires proper adherence to administrative procedural rules); *Booth v. Churner*, 532 U.S. 731, 741 (2001) (exhaustion of administrative remedies must be completed before filing suit).

[5] *See Booth*, 532 U.S. at 734.

[6] Fed. R. Civ. P. 8(a)(2).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, (continued...)

applied in Federal Rule of Civil Procedure 12(b)(6), including the rule that complaints filed by *pro se* prisoners are to be liberally construed, affording the prisoner the benefit of any doubt, and dismissal should be granted only where it appears beyond doubt that the plaintiff can plead no facts in support of his claim that would entitle him or her to relief.[8]

This requires the presentation of factual allegations sufficient to state a plausible claim for relief.[9] "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"[10] Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.[11] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12]

## II. GRAVAMEN OF COMPLAINT

Hunter alleges two causes of action. In his first cause of action Hunter alleges that Defendants retaliated against him for reporting staff corruption by filing false reports, confiscated and destroyed personal property, interfered with his medical accommodations,

---

[7](...continued)
550 U.S. 554, 555 (2007)).

[8] *Wilhelm v. Rotham*, 680 F.3d 1113, 1121 (9th Cir. 2012).

[9] *Iqbal*, 556 U.S. at 678–69; *see Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting and applying *Iqbal* and *Twombly*).

[10] *Iqbal* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

[11] *Id.*

[12] *Id.* (quoting *Twombly*, 550 U.S. at 555).

obstructed grievances, harassed, and disclosed to prison population that Hunter was a snitch. Other than the interference with his medical accommodations, this cause of action is directed against Defendants White, Plough, Vechicco, Watkins, Rodriquez, Martinez, Lamb, Heck, Cota, Ibarra, Reynoso, Coffee, Diaz, Cartagena, Briggs, and Does 1 – 10. Hunter contends that Arnold somehow falsified the medical records interfering with Hunter's access to medically necessary care for a cane and extra mattress, and that Frite, Smiley, and Zamora had the duty to correct this improper action but failed to do so by denying Hunter's American's with Disabilities Act (ADA) appeal.[13]

In his second cause of action Hunter alleges that Ogbuehi, his primary care provider, improperly denied him access to his medically necessary disability cane and extra mattresses, failed to refer Hunter to a specialist for treatment, and improperly prescribed over-the-counter-pain medications that caused Hunter to suffer internal bleeding. Defendants Hashemi, Lewis, and Follett failed to properly investigate and remedy the improper actions of Ogbuehi.

## III. DISCUSSION

Initially, the Court notes that several of Hunter's claims are based upon violations of state law, not a violation of a constitutionally protected right. To the extent that Hunter alleges that the actions of Defendants violated state law, § 1983 does not provide a cause

---

[13] Hunter included allegations against Tann, Garza, Foston, and Lozano in the body of his Complaint, but did not include them as a named defendants in the caption. Hunter also appears to include his claims against Defendant Ogbuehi in his first cause of action, essentially duplicating them in his second cause of action. For the purposes of screening the Court considers all claims against Ogbuehi as part of the second cause of action, not the first.

of action for those claims.[14] In addition, Hunter must show compliance with the presentment requirements of the California Tort Claims Act,[15] which he has not done.

*First Claim for Relief*

Hunter's first claim for relief presents a "shotgun" approach, naming as defendants several correctional officers whose actions allegedly violated Hunter's constitutionally protected rights. To some extent, Hunter's allegations are implausible.[16] To a substantial extent, Hunter's Complaint consists of vague, conclusory statements devoid of specific facts.

The heart of Hunter's first cause of action is described in the first two paragraphs:

> On October 30, 2011 Plaintiff reported to Defendants White and Plough, who responded to process crime scene, that staff misconduct caused incident by making inmates think Plaintiff was a snitch and, that Plaintiff had personal writings in cell disclosing evidence how staff corruption is a major sponsor in prison violence. In response, White and Plough violated prison regulations and procedures by coordinating efforts to prevent Plaintiff from reporting staff misconduct and violated the First Amendment by retaliating against and caused injuries to Plaintiff for reporting staff misconduct.
>
> White and Plough met with and instructed Defendant Coffee, incident commander, who alerted and instructed Defendant Watkins, ASU second-watch Lieutenant (Lt.), that Plaintiff blaming staff for incident so White will cook-up incident report for Wadkins to use and generally disclose to ASU inmate and staff population that Plaintiff is snitching.[17]

---

[14] *Loftis v. Almagar*, 704 F.3d 645, 647 (9th Cir. 2012) (*citing Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

[15] *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 627 n.4 (9th Cir. 1988).

[16] For example, Hunter has correctional officers giving orders to a correctional lieutenant, their superior.

[17] Complaint, Docket 1, p. 5.

The remainder of Hunter's first claim for relief details how that White and Plough, allegedly in concert with the other Defendants, violated Hunter's rights.

The Ninth Circuit has defined the parameters of a retaliation claim:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.[18]

The Ninth Circuit has "also noted that a plaintiff who fails to allege a chilling effect may still state a claim if he has suffered some harm."[19] Moreover, "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect."[20] Nor need the threat be explicit or specific.[21]

A prisoner must show some causal connection between the action taken by the state actor and prisoner's protected conduct. That is, "[t]o prevail on a retaliation claim, a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct."[22]

A prisoner need not show that his speech was actually inhibited or suppressed. The appropriate test is whether the adverse action at issue "would chill *or* silence a person of

---

[18] *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

[19] *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citing *Rhodes*, 408 F.3d at 568 n. 11).

[20] *Id.* at 1270 (emphasis in the original).

[21] *Id.*

[22] *Id.* at 1271 (internal quotation marks and citation omitted).

ordinary firmness from future First Amendment activities."[23] Otherwise, a defendant could escape liability merely because a particularly determined prisoner persists in this protected activity.[24]

The crux of the problem is that, as presently pleaded, other than to allude to personal writings in his cell containing evidence of staff corruption, Hunter pleads no facts regarding the nature of those writings.

Although Hunter alleges that, in addition to the confiscation of his cane and extra mattress, his personal property was destroyed, other than the personal writings, he does not identify that additional personal property. Indeed, in the context of the Complaint taken as a whole, the only personal property confiscated was the cane, extra mattress, and personal writings. To the extent that Hunter contends that additional personal property was confiscated or destroyed be must specifically identify that property.

Defendants' acts in labeling Hunter a "snitch" may constitute a cognizable violation under the Fourteenth Amendment.[25] On the other hand, Hunter has not alleged that he has been threatened with any violence as a result of the "snitch" labeling. In the absence of threats or some other adverse effect, Hunter has not suffered any cognizable injury. Although it is unclear from the Complaint, it appears that at least some of the Defendants, e.g., White, Lamb, Wadkins, Vechecco, Martinez, and Rodriquez, publicly labeled Hunter a "snitch." In amending his Complaint Hunter must specifically identify which defendant

---

[23] *Id.* (internal quotation marks and citation omitted).

[24] *Id.* (emphasis in the original).

[25] *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989); *see also Douglas v. Oregonian*, 465 Fed. Appx. 714, 715 (9th Cir. 2012) (citing *Valandingham*).

or defendants publicly labeled him a "snitch," and the harm or threatened harm he suffered as a result.

To the extent that Hunter's claims rest upon some conspiracy theory, it also falls far short of the mark. The elements of a conspiracy are twofold: (1) an agreement or meeting of the minds to violate constitutional rights; and (2) an actual deprivation of those rights.[26] The function of a conspiracy claim is to attribute the acts of each co-conspirator to each of the other conspirators. No facts have been alleged to support the finding of a conspiracy. In short, Hunter's conspiracy theory is based solely upon conjecture and speculation.

Hunter's claims against Tann, Garza, Diaz, Lozano, Cartagena, Heck, Cota, Reynoso, Zamora, Briggs, and Ibarra all appear to arise out of the processing of Hunter's administrative appeals. While relevant to the question of whether or not Hunter properly exhausted his administrative remedies, in the absence of a Fourteenth Amendment due process violation, the incorrect resolution of his claims does not give rise to a constitutional violation.

*Second Claim for Relief*

Reduced to its essence Hunter's claim is that Ogbuehi: (1) improperly prescribed an ineffective over-the-counter ("OTC") medication, which caused internal bleeding, instead of morphine; (2) denied Hunter access to appropriate specialist medical care; and (3) rescinded the requirement that Hunter be issued a cane and second mattress. With

---

[26] *See Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006) (quoting *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002)).

respect to Hashemi, Follett, and Lewis, Hunter contends that they had the responsibility to correct Ogbuehi's medical errors.[27]

In determining deliberate indifference, the court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect.[28] The Ninth Circuit has spoken to the subject of the appropriate test under *Estelle*:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983. A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. If the harm is an isolated exception to the defendant's overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.[29]

A defendant must purposely ignore or fail to respond to a prisoner's pain or medical need in order for deliberate indifference to be established. "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish

---

[27] It appears from the allegations of the Complaint that this malfeasance was in connection with Hunter's internal appeals.

[28] *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

[29] *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citations omitted).

a constitutional deprivation under the Eighth Amendment."[30] A mere difference of medical opinion regarding the course of medical treatment is "insufficient as a matter of law, to establish deliberate indifference."[31]

In this case, except for perhaps the allegation that Ogbuehi continued to prescribe the OTC medication (naproxin?) for a period of approximately six months after it was determined it was causing internal bleeding, nothing in Hunter's allegations comes even close to satisfying the threshold requirements for a deliberate indifference claim. Even with respect to the internal bleeding contention all the Court has before it is Hunter's conclusory statement, which is itself unclear as to whether the continuation on the OTC medication was ordered by Ogbuehi or another physician (Dr. Wang).[32]

To the extent that Hunter includes a claim against Ogbuehi and Hashemi based upon medical malpractice under California law, the Court declines to exercise its pendant jurisdiction over that claim. Accordingly, it will be dismissed without leave to amend.[33]

---

[30] *Toguchi v. Chung*, 391 F. 3d 1051, 1060 (9th Cir. 2004); *see Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (stating that even gross negligence is insufficient to establish a constitutional violation); *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curium) (noting mere indifference, medical malpractice, or negligence do not support a cause of action under the Eighth Amendment).

[31] *Toguchi*, 391 F.3d at 1059–60 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)); *Franklin v. State of Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (noting, also, that a disagreement between a prisoner and a medical professional over the most appropriate course of treatment cannot give rise to a viable claim of deliberate indifference).

[32] The Court finds somewhat puzzling that Hunter refers to "undisclosed documents" while simultaneously describing in some detail to not only what was contained in those documents, but also what was omitted.

[33] The Court notes that, given the time lapse between the time it appears Hunter (continued...)

While it appears unlikely that Hunter can properly plead a viable deliberate indifference cause of action, because it is not clearly evident that he cannot, this Court is reluctant at this earlier stage to dismiss without leave to amend.[34] Consequently, except to the extent it is based upon state law, dismissal of the second claim for relief will be with leave to amend.

## IV. ORDER

Based upon the foregoing:

1. The claims against Defendants Lozano, Frite, D. Smiley, Tann, Garza, R. Diaz, L. Cartagena, C. M. Heck, J. Cota, J. Reynoso, J. Zamora, Briggs, O. A. Ibarra, Hashemi, S. Follett, and J. Lewis are **DISMISSED** without leave to amend.

2. In all other respects the first claim for relief as against W. White, J. Plough, W. D. Watkins, Vechicco, A. Rodriquez, J. Martinez, Lamb, and Does 1 – 10 is **DISMISSED** with leave to amend consistent with this decision. In amending his complaint Hunter should attach thereto complete copies of all documents to which he refers or support his contentions to the extent that copies of the document are within Hunter's possession, custody or control.

3. To the extent the second claim for relief is based upon California law, it is **DISMISSED** without leave to amend.

---

[33](...continued)
completed his internal administrative appeals and the date of his Complaint, less than one month, Hunter could not have possibly complied with the California Tort Claims Act.

[34] *See Hartman v. California Dept. of Corr. and Rehab.*, 707 F.3d 1141, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."); *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc) (explaining that leave to amend should be given unless amendment would be futile).

4. To the extent the second claim for relief is based upon a violation of the Eighth Amendment (deliberate indifference), it is **DISMISSED** with leave to amend.

Plaintiff is hereby granted through and including **July 24, 2015**, within which to file an Amended Complaint consistent with this Order.

**IT IS ORDERED** this 17th day of June, 2015.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE