UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEMONDZA HUNTER,<br><br>          Plaintiff,<br><br>vs.<br><br>W. WHITE, *et al.*,<br><br>          Defendants. | Case No. 1:13-cv-01681-RRB<br><br>**ORDER DISMISSING**<br>**FIRST AMENDED COMPLAINT** |

Plaintiff Demondza Hunter, a California state prisoner appearing *pro se* and *in forma pauperis*, filed a civil rights complaint under 42 U.S.C. 1983 against numerous officials employed by the California Department of Corrections and Rehabilitation ("CDCR").[1] The Court dismissed Hunter's Complaint with leave to amend.[2] Hunter has filed his Amended Complaint.[3] Hunter's claims arose while he was incarcerated at the California Substance

---

[1] In addition to W. White, Correctional Officer, Hunter names as Defendants: J. Plough, Correctional Officer; W. D. Watkins, Lieutenant; Vechicco, Correctional Officer; A. Rodriguez, Correctional Officer; J. Martinez, Correctional Officer; Lamb, Correctional Officer; C. Ogbuehi, Physician's Assistant; and John/Jane Does 1–10, Peace Officers.

[2] Docket 9.

[3] Docket 17.  Although named as Defendants in the original complaint, Hunter has omitted from his Amended Complaint: C. Arnold, RN; C. M. Heck, Appeals Coordinator; J. Cota, Appeals Coordinator; J. Zamora, Appeals Examiner; O. A. Ibarra, Lieutenant; J. Reynoso, CDW; D. Smiley, CEO; H. Coffee, Lieutenant; R. Diaz, Warden; L. Cartagena, Administrative Assistant/Public Information Officer; R. Briggs, Chief CDR Appeals; Frite, SRN; Hashemi, MD; S. Follet, CEO; and J. Lewis, Chief Medical Appeals Officer. Consequently, the Court assumes Hunter has abandoned all claims against the omitted defendants.

Abuse Treatment Center, Corcoran ("CSATF"). Hunter is currently incarcerated at the California State Prison–Sacramento "(CSP-Sac)".

## I.    SCREENING REQUIREMENT

This Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[4] The Court set forth the standards applicable to screening in its earlier Dismissal Order; therefore, the Court does not repeat them herein.

## II.    GRAVAMEN OF AMENDED COMPLAINT

Hunter alleges two causes of action. His first cause of action is brought against Defendants White, Plough, Watkins, Vechicco, Rodriquez, Martinez, Lamb, and Does 1 – 10. In this Cause of action Hunter alleges that these Defendants in various ways retaliated against him for reporting staff corruption[5] by confiscating and destroying personal property,[6] interfered with his secondary medical needs,[7] and disclosed to prison population that Hunter was a snitch.

---

[4]  28 U.S.C. § 1915A(a).

[5]  In connection with this allegation Hunter refers to an article he had written concerning the social situation of individuals confined in California state prisons, which he refers to as his "protected conduct."

[6]  Described as: (1) Federal Habeas Corpus Practice & Procedure by Liebman and Hertz (2 volumes w/current supplement); (2) top/bottom thermal under garments; (3) personal address book; (4) Holy Quran; (5) college dictionary; (6) pair of shower shoes; (7) first class stamps (32); and (8) personal letters, papers & pictures.  Docket 17, p. 8, ¶ 18.

[7]  Described as: requiring relatively level terrain and no obstruction in path of travel, cane, housing restrictions–lower bunk, no stairs, extra mattress, and physical limitations to job assignments–no repetitive bending or twisting, no standing or walking >50% of assignment. Docket 17, p. 25.

In his second cause of action Hunter alleges that Ogbuehi, his primary care provider, improperly denied him access to his medically necessary disability cane and extra mattresses, failed to refer Hunter to a specialist for treatment, and improperly prescribed pain medications that caused Hunter to suffer internal bleeding.

### III.  DISCUSSION

Initially the Court notes that throughout the Amended Complaint Hunter refers to more than 30 exhibits. Hunter has, however, failed to attach the referenced exhibits. **Hunter is reminded that in preparing and filing his Second Amended Complaint he *must* attach as exhibits copies of all papers and documents to which reference is made in the body of the Second Amended Complaint.** *Failure to do so will result in the dismissal of the action*.

*First Claim for Relief*

The factual allegations underlying this claim are summarized in chronological order as follows:

August 31, 2011:  Martinez issued Hunter his personal property.[8]

October 30, 2011:  In processing a crime scene caused by an altercation between Hunter and other inmates White by facial expressions allegedly communicated to Hunter that he not make a report lest Hunter be subjected to inmate and STG (Security Threat Group)

---

[8]  Docket 17, p. 8, ¶ 18.

retaliation for being a snitch.[9]  Hunter was then rehoused and informed that Hunter's personal property and secondary medical needs would be delivered the following day.[10]

October 30, 2011:  Does 1 – 10 received Hunter's personal property and "secondary medical needs" from White and subsequently confiscated or destroyed it.[11]

November 1, 2011 – January 31, 2012:  Vechicco, Rodriguez, and Martinez would make public remarks in reference to Hunter's "snitching."[12]

November 23, 2011:  That upon receiving a CDCR Form 22 inquiring into the disposition of Hunter's personal property and secondary medical needs, in the presence of other inmates Watkins made the comment "I'll sign this but dont [sic] expect me to help a snitch." Hunter alleges that because of his protected conduct his personal property and secondary medical needs would not be returned.[13]

December 8, 2011:  Does 1 – 10 interfered with Hunter's access to his secondary medical needs by incorrectly reporting to Ogbuehi that Hunter had attacked his cell-mate and "instructed" Ogbuehi to rescind Hunter's secondary medical needs.[14]

---

[9] *Id.,* pp. 8–9, ¶ 19.

[10] *Id.*, p. 11, ¶ 20.

[11] *Id.*, p. 13, ¶ 23.

[12] *Id.*, pp. 11–12, ¶ 21.

[13] *Id.*, pp. 13–14, ¶ 24.

[14] *Id.*, pp. 14–15, ¶ 25.

December 15, 2011: Lamb, ostensibly referring to Hunter's protected conduct in authoring the article, stated: "No wonder staff say you snitching and I suggest that if you want staff help you better blame that incident on someone else before you get yourself hurt."[15]

February 9, 2012: Does 1 – 10 again incorrectly reported that Hunter had attacked his cell-mate with a cane.[16]

April 11, 2012: While walking along the tier in the presence of other inmates Rodriguez or Lamb announced: "Hunter everybody knows you are snitching . . . so come out to talk to the District Attorney. Following this the District attorney stated:[17] "Hunter will you come out and talk to me about inmate Davis," to which Hunter responded "no." The District Attorney the stated: "You cant [sic] say I did'nt [sic] try."[18]

January 8, 2013: Lamb, in the presence of other inmates stated: "Hunter that little appeal you wrote not going to see day light . . . but I made sure that 'IR' with White's report you snitching in did."[19]

Initially, the Court notes that, other than being present, nothing in the First Amended Complaint contains any allegation that either J. Plough or W. D. Watkins participated in or was otherwise responsible for any of the alleged wrongful acts. Thus, the claim as against them must be dismissed for failure to state a claim upon which relief may be granted.

---

[15] *Id.*, p. 15, ¶ 26.

[16] *id.*, p. 14, ¶ 25.

[17] Identified as Does 1 – 10.

[18] Docket 17, p. 16, ¶ 28.

[19] *Id.* p. 17, ¶ 29.

ORDER DISMISSING FIRST AMENDED COMPLAINT
*Hunter v. White*, 1:13-cv-01681-RRB – 5

As the Court noted in its original dismissal order, Defendants' acts in labeling Hunter a "snitch" may constitute a cognizable violation under the Fourteenth Amendment.[20] On the other hand, Hunter has not alleged that he has been threatened with any violence or other adverse act as a result of the "snitch" labeling. In the absence of threats or some other adverse effect, Hunter has not suffered any cognizable injury. Although in amending his Complaint Hunter has specifically identified which Defendants publicly labeled him a "snitch," Hunter has not alleged that he suffered any the harm or threatened harm as a result. Consequently, Hunter continues to fail to allege a viable cause of action based upon the alleged labeling as a "snitch."  While it is unlikely that Hunter can truthfully plead a viable claim based upon the labeling as a "snitch," the Court will allow him one more opportunity to plead that claim.

The alleged destruction of Hunter's personal property and the "secondary medical needs" presents a somewhat different picture. Neither the negligent nor intentional deprivation of property states a viable claim under § 1983.[21] The availability of a state court cause of action precludes relief under § 1983 because it provides adequate due process.[22] While these acts may constitute a viable claim under California law, they do not support a claim under § 1983.  Accordingly, to the extent that the First Claim for Relief is based upon the destruction

---

[20] Docket 9, citing *Valandingham v. Bojorquez*, 866 F.2d 1135, 1139 (9th Cir. 1989); *see also Douglas v. Oregonian*, 465 Fed. Appx. 714, 715 (9th Cir. 2012) (citing *Valandingham*).

[21] *Hudson v. Palmer*, 468 U.S. 517, 533–34 (1984).

[22]  *King v. Masserweh*, 782 F.2d 825, 826 (9th Cir. 1986); *see also Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (where state cannot foresee deprivation and therefore provide meaningful hearing prior to deprivation, statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process).

of his personal property and "secondary medical needs" it must be dismissed without leave to amend.

### Second Claim for Relief

Hunter describes in detail a host of medical problems and medical orders issued by various physicians over a span of approximately twelve years.[23] Hunter then alleges that Ogbuehi: (1) incorrectly reported that Hunter's "secondary medical needs" improved in December 2011 and rescinded the order that Hunter be provided a cane and extra mattress; (2) incorrectly reported that Hunter had a full range of motion on various dates between November 2011 and November 2012; (3) improperly relied on X-rays instead of a CT-Scan to establish the lack of fracture or dislocation in Hunter's spine in March 2012; and (4) notwithstanding a finding of markedly reduced platelets based upon a lab report on May 30, 2012, and a diagnosis of thrombocytopenia (internal bleeding) caused by naproxsin on August 2, 2012, did not discontinue the prescription for naproxsin until November 8, 2012.

Hunter also alleges that in January 2012 Ogbuehi snatched Hunter's cane allegedly in retaliation for Hunter's filing a staff misconduct complaint against White. Hunter further alleges that in connection with Hunter's staff complaint Ogbuehi misrepresented that Hunter had attacked another inmate with the cane. Finally, Hunter alleges that in April 2012 Ogbuehi explained that, had Hunter not said anything about Ogbuehi's co-workers, Ogbuehi would have referred Hunter to a spine specialist and that no matter how many times Hunter complained, Ogbuehi would continue to prescribe naproxsin and oxcarbazine.

---

[23] Docket 17, pp. 20–26. Hunter refers to these collectively as his "secondary medical needs."

In determining deliberate indifference, the court scrutinizes the particular facts and looks for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect.[24] The Ninth Circuit has spoken to the subject of the appropriate test under *Estelle*:

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. Yet, an inadvertent [or negligent] failure to provide adequate medical care alone does not state a claim under § 1983. A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs. If the harm is an isolated exception to the defendant's overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference.[25]

A defendant must purposely ignore or fail to respond to a prisoner's pain or medical need in order for deliberate indifference to be established. "Deliberate indifference is a high legal standard. A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."[26] A mere difference of medical

---

[24] *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

[25] *Jett v. Penner*, 429 F.3d 1091, 1096 (9th Cir. 2006) (internal quotation marks and citations omitted).

[26] *Toguchi v. Chung*, 391 F. 3d 1051, 1060 (9th Cir. 2004); *see Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (stating that even gross negligence is insufficient to establish a constitutional violation); *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curium) (noting mere indifference, medical malpractice, or negligence do not support a cause of action under

opinion regarding the course of medical treatment is "insufficient as a matter of law, to establish deliberate indifference."[27]

In this case, except for the allegation that Ogbuehi failed to discontinue a medication (naproxsin) for a period of approximately three to five months after it was determined it was causing internal bleeding, nothing in Hunter's allegations comes even close to satisfying the threshold requirements for a deliberate indifference claim.[28] While whether Hunter can establish that Ogbuehi was deliberately indifferent to Hunter's serious medical needs by delaying the discontinuation of naproxsin may be questionable,[29] dismissal of that claim at this stage of the proceeding is unwarranted.

To the extent that Hunter attempts to include a claim against Ogbuehi based upon medical malpractice under California law, the Court previously dismissed it without leave to amend.[30]

---

the Eighth Amendment).

[27] *Toguchi*, 391 F.3d at 1059–60 (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)); *Franklin v. State of Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (noting, also, that a disagreement between a prisoner and a medical professional over the most appropriate course of treatment cannot give rise to a viable claim of deliberate indifference).

[28] The Court notes that to a significant extent Hunter's claims are based upon his own subjective understanding of what quoted statements meant.

[29] The Court notes that nothing in Hunter's allegations even remotely support a deliberate indifference claim against Ogbuehi prior to May 30, 2012, at the earliest.

[30] Docket 9.

IV.     **CONCLUSION/ORDER**

To the extent that the First Claim for Relief is based upon the destruction of his personal property and "secondary medical needs" it is hereby **DISMISSED** without leave to amend.

In all other respects the First Amended Complaint is **DISMISSED** with leave to amend. Plaintiff is granted through and including **April 29, 2016**, within which to file his Second Amended Complaint.

In amending his complaint, Plaintiff must:

1.      Adhere to the Federal Rules of Civil Procedure regarding pleadings, in particular, Rule 8(a), which provides—

> (a) CLAIM FOR RELIEF. A pleading that states a claim for relief must contain:
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

2.      Use and follow the instructions for completing the form provided by the Clerk of the Court.

3.      With respect to each claim plead without legal argument or citation to authority the facts entitling him to relief:  (1) the identity of the person doing the act; (2) description of the act and the date it occurred; (3) the harm/injury suffered as a result; and (4) the specific relief requested, e.g., amount of monetary damages.

4.  Sequentially number paragraphs, and attach copies of all documents referred to in the body of the complaint to the extent that copies of such documents are within his possession, custody, or control; and

5.  With respect to each claim affirmatively plead that he has exhausted his available administrative remedies or was prevented by circumstances beyond his control from exhausting his administrative remedies and, to the extent they are in his possession, custody, or control, attach to the Amended Complaint copies of all documents evidencing such exhaustion.

**In the event Plaintiff fails to file an amended complaint consistent with this Order within the time specified, or such later time as the Court may order, a judgment of dismissal may be entered without further notice.**

**IT IS ORDERED** this 15th day of March, 2016.

S/ RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE